UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LONG TERM CARE PHARMACY ALLIANCE, and AMERICAN SOCIETY OF CONSULTANT PHARMACISTS, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL O. LEAVITT, Secretary of the U.S. Department of Health and Human Services; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; and CENTERS FOR MEDICARE AND MEDICAID SERVICES, <br><br> Defendants. | Case No. 1:07-cv-01115 (ESH) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ENLARGEMENT OF TIME TO OPPOSE DEFENDANTS' MOTION TO DISMISS AND REQUEST FOR LEAVE TO TAKE JURISDICTIONAL DISCOVERY**

Jurisdictional discovery is not warranted in this case, and this Court should therefore deny plaintiffs' motion, including their request for leave to take jurisdictional discovery. Plaintiffs seek leave to conduct jurisdictional discovery that, they allege, may assist them in responding to one point raised in defendants' motion to dismiss – namely, that plaintiffs lack Article III standing, either on their own behalf or on behalf of their members, to pursue this action against defendants. However, in light of other significant jurisdictional defects in plaintiffs' case and plaintiffs' failure to establish a reasonable likelihood that discovery would yield any relevant information, defendants should not be subjected to discovery while their motion to dismiss is pending.

First, defendants' Memorandum in Support of Their Motion to Dismiss pointed to other

bases for holding that this Court lacks subject matter jurisdiction in addition to the issues surrounding Article III standing. In particular, defendants have argued that the United States has not waived sovereign immunity in this case. Subjecting the United States to jurisdictional discovery is unwarranted where this case is subject to dismissal on sovereign immunity grounds.

Second, plaintiffs have failed to establish any likelihood that jurisdictional discovery could yield information relevant to standing. Plaintiffs – two groups representing the interests of long-term care ("LTC") pharmacies – claim their members have been injured by the failures of third parties – prescription drug plan ("PDP") sponsors – to pay them what they are owed according to the terms of their contracts with these third parties. The only information relevant to the causation and redressability[1] of these alleged injuries is information that relates to the

---

[1] There are three requirements for Article III standing – injury in fact, causation, and redressability, see Shays v. FEC, 414 F.3d 76, 83 (D.C. Cir. 2005). By seeking jurisdictional discovery only in regard to causation and redressability, plaintiffs implicitly concede that any information relating to the injuries in fact that have allegedly been sustained by their members lies within their control, not defendants'. Yet, as defendants pointed out in their Memorandum in Support of Their Motion to Dismiss ("Memorandum" or "Defs.' Mem.") , plaintiffs' Complaint fails to provide any details regarding these alleged injuries. See Defs.' Mem. [doc. # 11], at 22. Jurisdictional discovery on causation and redressability issues is clearly unwarranted where plaintiffs have not even come forward with sufficient factual details to support the existence of their members' claimed injuries. Indeed, many courts have held that the failure of organizational plaintiffs to identify a single injured member is fatal to their attempt to establish representational standing. New York Statewide Senior Action Council v. Leavitt ("NYSSAC"), 409 F. Supp. 2d 325, 330 (S.D.N.Y. 2005) (holding that the judicial review provision in Part D "clearly indicates that Congress did not intend to allow requests for relief by associations on behalf of unidentified individuals"); Nat'l Alliance for the Mentally Ill, St. Johns Inc. v. Bd. of County Comm. of St. Johns County, 376 F.3d 1292, 1296 (11th Cir. 2004) (holding that organizations' "failure to identify an injured constituent prevents them from asserting associational standing"); Diaz v. Hood, 342 F. Supp. 2d 1111, 1117 (S.D. Fla. 2004) ("[g]enerally, a failure to identify a single injured constituent prevents an organization from asserting associational standing"); Hill v. Park, 2004 WL 180044, at *6 (E.D. Pa. Jan. 27, 2004) (organizational's failure to "identify any single member whose interests would confer associational standing" is grounds for dismissal); Maine Ass'n of Interdependent Neighborhoods v. Comm'r, Maine Dep't of Human Servs., 747 F. Supp. 88, 92 (D. Me. 1990) (organization failed to establish associational standing where complaint,

contracts between these pharmacies and these PDP sponsors, none of whom are parties in this case. This information is not within defendants' control. Plaintiffs' suggestion that discovery may allow them to show that defendants somehow do or can exert control over how and when PDP sponsors set and fulfill the terms of payment in their contracts with LTC pharmacies is entirely implausible.

Third, while plaintiffs rely on the fact that a California federal district court permitted jurisdictional discovery in Situ v. Leavitt, No. 06-2841 (N.D. Cal.), that decision was in error and should not be followed here. In addition, Situ is inapposite because it involves Medicare Part D enrolleees, who, unlike pharmacies, are the intended beneficiaries of the Medicare program and are entitled to benefits from Medicare.

Finally, even if there were any possibility that defendants might have caused the alleged injuries of plaintiffs' members, in order to establish causation in the case of any particular LTC pharmacy, the participation of that pharmacy would be required. This fact defeats plaintiffs' claims of representational standing.

**ARGUMENT**

"The scope of discovery, including that relating to jurisdictional facts, 'lies within the district court's discretion.'" Med. Solutions, Inc. v. C Change Surgical LLC, 468 F. Supp. 2d 130, 135 (D.D.C. 2006) (quoting Mwani v. bin Laden, 417 F.3d 1, 17 (D.C. Cir. 2005)); see also Roz Trading Ltd. v. Zeromax Group, Inc., No. 06-1040, 2007 WL 2812760, at *9 (D.D.C. Sept. 28, 2007) ("A district court has discretion over whether to defer a decision on jurisdiction until

---

"[did] not identify the member allegedly affected . . . , nor [did] it identify any of the factual circumstances supporting her claim to be subject to the regulation").

after discovery."). While discovery is generally not allowed before the parties have conferred pursuant to Fed. R. Civ. P. 26(f), see Fed. R. Civ. P. 26(d), the court may grant a request for limited discovery that may establish the court's jurisdiction. Med. Solutions, Inc., 468 F. Supp. 2d at 135.[2] However, in order to justify discovery at such a preliminary stage, the plaintiff "must make a detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce." Id. (internal quotation omitted). "Where there is no showing of how jurisdictional discovery would help plaintiff discover anything new, 'it [is] inappropriate to subject [defendants] to the burden and expense of discovery.'" Id. (quoting COMSAT Corp. v. Finshipyards S.A.M., 900 F. Supp. 515, 524, n. 4 (D.D.C. 1995)).

Even where plaintiffs do sufficiently describe the information that they hope to obtain through discovery at this preliminary stage, a request for jurisdictional discovery is properly denied where there is no reason to believe the information will materially affect the court's jurisdictional analysis. Fasolyak v. The Cradle Society, Inc., No. 06-01126, 2007 WL 2071644, at *10 (D.D.C. 2007) ("[I]t is not error to deny jurisdictional discovery when the record indicates there is nothing to be gained from the effort."); Estate of Klieman v. Palestinian Auth., 467 F. Supp. 2d 107, 115 (D.D.C. 2006) ("When the Court '[does] not see what facts additional

---

[2] Jurisdictional discovery is more commonly permitted where a plaintiff seeks to establish that the court has personal jurisdiction over a defendant. See, e.g., Diamond Chem. Co. v. Atofina Chems., Inc., 268 F. Supp. 2d 1, 15 (D.D.C. 2003) ("A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum."). However, the D.C. Circuit has held that jurisdictional discovery may also be warranted, "if allegations indicate its likely utility," in some instances where plaintiffs seek to meet their burden of establishing subject matter jurisdiction. Natural Res. Def. Council v. Pena, 147 F.3d 1012, 1024 (D.C. Cir. 1998) (remanding for jurisdictional discovery where "the record suggests at least one way in which the appellees *may* be able to establish their standing").

discovery could produce that would affect [its] jurisdictional analysis,' the district court does not abuse its discretion in denying the request for such discovery and dismissing the action." (quoting Mwani, 417 F.3d at 17)); see also Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC, 148 F.3d 1080, 1090 (D.C. Cir. 1998)("[I]t is reasonable for a court . . . to expect the plaintiff to show a colorable basis for jurisdiction before subjecting the defendant to intrusive and burdensome discovery." (internal quotation omitted)).  Here, plaintiffs have failed to demonstrate that any information they could obtain through discovery could change the jurisdictional analysis in this case.

I. **THIS COURT SHOULD NOT SUBJECT THE UNITED STATES TO JURISDICTIONAL DISCOVERY IN REGARD TO PLAINTIFFS' ARTICLE III STANDING WHEN THE UNITED STATES HAS NOT WAIVED SOVEREIGN IMMUNITY AND PLAINTIFFS ALSO LACK PRUDENTIAL STANDING**

As noted above, plaintiffs' request for jurisdictional discovery relates only to the issue of Article III standing.  However, in addition to contending that plaintiffs lack Article III standing, defendants have also contended that this Court lacks subject matter jurisdiction because the United States has not waived sovereign immunity for plaintiffs' claims, and because the plaintiffs fail to meet prudential standing requirements.  The Court may be required to dismiss this action for lack of jurisdiction on either of these other grounds.  Based on the standards discussed above, it would be premature for the Court to allow discovery in regard to Article III standing when that issue alone cannot establish the Court's subject matter jurisdiction.

Particularly in regard to sovereign immunity, the D.C. Circuit has held that, "[i]n order to avoid burdening a sovereign that proves to be immune from suit, . . . jurisdictional discovery should be carefully controlled and limited," and that "it should not be authorized at all if the

defendant raises . . . a different jurisdictional . . . ground . . . the resolution of which would impose a lesser burden upon the defendant." Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000). Although the court in Phoenix Consulting was discussing the immunity of a foreign sovereign, rather than of the United States, the same principle applies here.

The basis for the defendants' sovereign immunity argument is the existence of an alternative remedy in the form of individual lawsuits, brought by any of plaintiffs' members who have actually sustained injury, against the PDP sponsors with whom they have contracts and who are the entities that, it is undisputed, are responsible, if anyone is, for actually making the payments that are allegedly owed to plaintiffs' members. See Defs.' Mem. [doc. # 11], at 17-19. Based on this adequate remedy, the waiver of sovereign immunity set forth in the Administrative Procedure Act, 5 U.S.C. §§ 701-706, does not apply. See Defs.' Mem. at 17. As explained in defendants' Memorandum, plaintiffs do not contest that this remedy is available; they merely suggest that it would be less convenient to pursue. Id. at 18. That being the case, there is absolutely no reason to subject the defendants – all federal government entities – to the burden and expense that would be involved in jurisdictional discovery.

II. **JURISDICTIONAL DISCOVERY IS NOT APPROPRIATE HERE BECAUSE THERE IS NO POSSIBILITY THAT IT WILL YIELD FACTS RELEVANT TO THE CAUSATION AND REDRESSABILITY PRONGS OF ARTICLE III STANDING**

Jurisdictional discovery is also unwarranted because plaintiffs have failed to show that discovery is likely to yield information that might remedy plaintiffs' difficulties in establishing Article III standing. As noted above, jurisdictional discovery may be permitted where a plaintiff demonstrates "its likely utility" in establishing a court's subject matter jurisdiction. Natural Res.

Def. Council, 147 F.3d at 1024.  Under no circumstances is jurisdictional discovery allowed, however, where a plaintiff merely speculates that relevant evidence may exist.  Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC, 148 F.3d 1080, 1090 (D.C. Cir. 1998) (holding plaintiff must have "good faith belief that [jurisdictional] discovery will enable it show" jurisdiction); Bastin v. Federal Nat. Mortg. Ass'n, 104 F.3d 1392, 1396 (D.C. Cir. 1997) ("The district court does not abuse its discretion when it denies a discovery request that would amount to nothing more than a fishing expedition."); Poe v. Babcock Int'l, 662 F. Supp. 4, 7 (M.D. Pa. 1985) (denying request for discovery based on "mere speculation").

Here, plaintiffs merely speculate that discovery may yield some evidence showing a causative link between actions of defendant the Center for Medicare and Medicaid Services ("CMS") and the alleged failure or delay of unidentified PDP sponsors to pay an unknown number of LTC pharmacies amounts that are, possibly, owed to the LTC pharmacies under the terms of their contracts.[3]  Plaintiffs engage in this speculation despite the total absence in Medicare law of any indication that CMS plays any role in determining the payment obligations between PDP sponsors and LTC pharmacies, and despite the existence of independent contracts between individual PDP sponsors and individual LTC pharmacies.  See Declaration of Abby Block ("Block Decl."), ¶¶ 8-9 (attached to this memorandum as Exhibit A).  Plaintiffs'

---

[3] As explained in defendants' Motion to Dismiss, the amounts that are owed are ostensibly equal to the amounts in copayments under Medicare Part D, Medicare's prescription drug benefit, that certain Medicare Part D beneficiaries, who were also LTC pharmacy customers, did not have to pay because they were entitled to a copayment subsidy.  As plaintiffs' Complaint omitted any details concerning the terms of the contracts between LTC pharmacies and PDP sponsors, the amounts that may actually have been owed, and any associated requirements that might be set forth in the contracts as prerequisites to obtaining reimbursements of these amounts, are unknown to defendants.

suggestion that they may find information relevant to redressability is even more speculative, as it would require evidence that CMS could take action that would cause PDP sponsors to make payments to LTC pharmacies regardless of whether the contracts between the two parties actually require such payments.[4]  There is simply no basis for supposing that any information gleaned through document discovery or depositions could establish either causation or redressability where the statutory and regulatory requirements do not create any link between CMS, on the one hand, and PDP sponsors' payment obligations towards LTC pharmacies, on the other.

Plaintiffs focus their attention on the transfer of information concerning beneficiaries' eligibility for copayment subsidies from states to CMS to PDP sponsors.  See Pls.' Mot. [doc. # 12], at 3 (indicating plaintiffs seek information "relating to each step of the CMS process of securing information about the identity and eligibility status of dual-eligible beneficiaries and the provision of eligibility data by CMS to PDPs").  Again, that information can only be relevant to plaintiffs' standing if there is some connection between the PDP sponsors' receipt of this information and their payments to LTC pharmacies.  However, there is no such connection.  What plaintiffs fail to acknowledge is that the structure of Medicare Part D and its implementing regulations clearly separates CMS's payment obligations towards PDP sponsors from receipt of subsidy eligibility information.  There is no direct correlation between the two.  As explained in defendants' Memorandum, CMS, rather than relying on actual information, makes interim payments to PDP sponsors based on prior estimates.  See Defs.' Mem. at 25; Block Decl. ¶ 7.

---

[4]As the injury plaintiffs allege on behalf of their members is the failure of some members to receive reimbursements, in order to demonstrate redressability, plaintiffs would have to show that CMS is able to effect these reimbursements.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 107 (1998) ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement.").

The fact that CMS's payments to PDP sponsors do not depend on the eligibility information renders plaintiffs' suggestion that PDP sponsors' payments to LTC pharmacies <u>does</u> depend on this information implausible at best.  See Block Decl. ¶ 10.

As defendants have previously argued, if there is any such connection, it is because the LTC pharmacies <u>agreed</u> to the connection as a term in their contracts, not because the connection was imposed by CMS or Medicare law.  If there is any such contractual term, it is within the control of plaintiffs' members and does not require jurisdictional discovery for plaintiffs to obtain.  Even if such contractual terms were sufficient to establish causation, however, they clearly could not establish redressability.  A contracting party cannot voluntarily agree that his payment will be contingent on a specific action by a third party and then hold the third party responsible for ensuring that he recovers under the contract.  The third party has no capacity to enforce the contract; only the contracting party can do that.[5]

### III. THE NORTHERN DISTRICT OF CALIFORNIA'S DECISION TO ALLOW JURISDICTIONAL DISCOVERY IN *SITU V. LEAVITT* DOES NOT PROVIDE PERSUASIVE AUTHORITY TO SUPPORT JURISDICTIONAL DISCOVERY IN THIS CASE

In arguing that jurisdictional discovery is appropriate here, plaintiffs rely heavily on the decision of the District Court for the Northern District of California to allow jurisdictional discovery in another case involving Medicare Part D copayment subsidies.  <u>See</u> Order, <u>Situ v. Leavitt</u>, No. 06-02841 (N.D. Cal. filed Aug. 30, 2006) (attached to plaintiffs' motion as Exhibit

---

[5]The only circumstance where a third party can enforce a contract is where the third party is an intended beneficiary of the contract.  <u>Sidibe v. Traveler's Ins. Co.</u>, 468 F. Supp. 2d 97, 100 (D.D.C. 2006) (recognizing that, "for a third party to sue to enforce a contract, the contract at issue must directly and unequivocally intend to benefit" the third party).  Clearly, CMS is not an intended beneficiary of the contracts between PDP sponsors and LTC pharmacies.

A). Defendants believe that the court in <u>Situ</u> wrongly decided this issue. In addition, this Court should disregard the court's decision in <u>Situ</u> because the facts of the case make it inapposite. <u>Situ</u> involves claims brought by Medicare Part D enrollees who allege that they are entitled under Medicare law to receive copayment subsidies, but that they have not received the subsidies due to delays in CMS's provision of eligibility information to PDP sponsors. The distinction between Medicare Part D enrollees and LTC pharmacies is significant. Unlike LTC pharmacies, whose entitlement to payment is dependent on contracts with PDP sponsors, low-income Medicare Part D enrollees may be entitled under Medicare law to receive copayment subsidies. <u>See</u> 42 C.F.R. § 423.782. Furthermore, Medicare law provides that PDP sponsors may collect copayments from Medicare Part D beneficiaries until they receive information that the beneficiaries are eligible for subsidies. <u>See, e.g.</u>, <u>id.</u> § 423.800(b).[6] After receiving eligibility information, the PDP sponsors must reimburse any copayments that were collected from subsidy-eligible individuals. <u>Id.</u> § 423.800(c). It was clear in <u>Situ</u> that the beneficiaries' subsidies were dependent on information provided by CMS. The only dispute in regard to whether the causation prong of Article III's standing requirement was satisfied in that case concerned whether the beneficiaries' alleged failure to obtain the subsidies was due to a failure of CMS or a failure of some other entity along the chain. <u>See</u> Order at 3 ("Plaintiffs may be able to ascertain whether the alleged failures lie with Defendant . . . or with another entity.").

    In contrast, LTC pharmacies are not part of the chain. LTC pharmacies are not entitled to subsidies under Medicare law. Rather, the amounts they are paid by PDP sponsors are

---

[6]CMS has also issued guidance allowing for beneficiaries to receive the subsidies by providing evidence of their eligibility at the time they buy prescription medications.

determined by their contracts. The analysis in Situ therefore should not persuade this Court that jurisdictional discovery is appropriate in this case.

IV.  **ESTABLISHING CAUSATION IN REGARD TO PLAINTIFFS' MEMBERS WOULD REQUIRE PARTICIPATION BY INDIVIDUAL LTC PHARMACIES, THUS DEFEATING THE REPRESENTATIONAL STANDING OF THE ORGANIZATIONAL PLAINTIFFS**

Because contractual terms between different LTC pharmacies and various PDP sponsors are likely to vary, in order for individual LTC pharmacies to establish Article III standing, their participation in the litigation would be required. Even if jurisdictional discovery were able to reveal information showing that CMS could have caused the alleged injuries of plaintiffs' members, it could not establish that CMS actually did cause these injuries. In order to make that determination, it would be necessary to review the contracts between the allegedly injured members and the relevant PDP sponsors, as well as any communications between the contracting parties concerning reimbursement of the copayment amounts, and any steps individual LTC pharmacies took to comply with any documentation or other requirements that the contracts imposed as conditions for obtaining reimbursements. If a particular PDP sponsor did not pay a particular LTC pharmacy the amount in question because the pharmacy did not follow the procedures prescribed in its contract with the PDP sponsor, then CMS cannot be considered the cause of LTC pharmacies' injuries.[7] In other words, it would be necessary to review the effect, if

---

[7] Another piece of information that is within the control of plaintiffs or plaintiffs' members is whether all LTC pharmacies have sustained injuries, regardless of the identity of the PDP sponsor with whom they have contracted, or whether only LTC pharmacies that have contracted with certain PDP sponsors have been affected. If all the alleged injuries have been sustained through contractual relationships with only a small number of PDP sponsors, this would tend to show, regardless of any other information that might be discovered, that the cause of the alleged injuries is not CMS but has something to do with these contractual relationships. Again, plaintiffs should be required to come forth with details regarding these issues before the

any, of CMS actions on each individual LTC pharmacy that alleges an injury. Plaintiffs – as organizations that have no standing to sue on their own behalf – cannot establish representational standing to bring suit on behalf of their members if to do so "requires the participation of [their] individual members in the lawsuit." Hunt v. Wash. State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977). Thus, the causation inquiry is more likely to defeat plaintiffs' assertions of standing than to establish them.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion for enlargement of time and request for leave to take jurisdictional discovery should be denied. As plaintiffs stated in their motion, defendants have no objection to the alternative briefing schedule plaintiffs have set forth should the Court deny leave to take jurisdictional discovery.

Dated: October 22, 2007               Respectfully submitted,

                                      PETER D. KEISLER
                                      Assistant Attorney General
                                      JEFFREY A. TAYLOR
                                      United States Attorney
                                      SHEILA M. LIEBER
                                      Deputy Director

                                      /s/ Kathryn L. Wyer
                                      KATHRYN L. WYER
                                      U.S. Department of Justice, Civil Division
                                      20 Massachusetts Ave., NW,
                                      Washington, D.C. 20530
                                      Telephone: (202) 616-8475 / Fax: (202) 616-8202
                                      kathryn.wyer@usdoj.gov
                                      *Attorneys for Defendants*

---

Court requires defendants to submit to jurisdictional discovery.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LONG TERM CARE PHARMACY ALLIANCE, and AMERICAN SOCIETY OF CONSULTANT PHARMACISTS, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL O. LEAVITT, Secretary of the U.S. Department of Health and Human Services; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; and CENTERS FOR MEDICARE AND MEDICAID SERVICES, <br><br> Defendants. | Case No. 1:07-cv-01115 (ESH) |

**[Proposed] ORDER**

Upon the Court's consideration of plaintiffs' Motion for Enlargement of Time to Oppose Defendants' Motion to Dismiss and Request for Leave to Take Jurisdictional Discovery, the opposition thereto, and the entire record herein, it is, this _____ day of _____, 2007, ORDERED that plaintiffs' motion for enlargement of time and request for leave to take jurisdictional discovery is DENIED. It is FURTHER ORDERED that plaintiffs' motion for enlargement of time in the alternative is GRANTED. Plaintiffs' response to defendants' Motion to Dismiss is due on or before November 16, 2007, and defendants' reply in support of their Motion to Dismiss is due on or before December 5, 2007.

_____
The Honorable Ellen S. Huvelle
United States District Judge

# EXHIBIT A

Case 1:07-cv-01115-ESH    Document 13-3    Filed 10/22/2007    Page 1 of 6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LONG TERM CARE PHARMACY ALLIANCE, )
and AMERICAN SOCIETY OF CONSULTANT )
PHARMACISTS, )
)
Plaintiffs, )
)
v. )
)
MICHAEL O. LEAVITT, Secretary of the )
U.S. Department of Health and Human Services; )   Case No. 1:07-cv-01115 (ESH)
U.S DEPARTMENT OF HEALTH AND )
HUMAN SERVICES; and CENTERS FOR )
MEDICARE AND MEDICAID SERVICES, )
)
Defendants, )

## DECLARATION OF ABBY BLOCK

I, Abby Block, declare the following, under penalty of perjury pursuant to 28 U.S.C. § 1746, to be a true and correct statement of facts:

1. I am the Director of the Center for Beneficiary Choices ("CBC") within the Centers for Medicare and Medicaid Services ("CMS"). CMS is the federal agency within the United States Department of Health and Human Services ("HHS") responsible for administering the Medicare and Medicaid programs. The Medicare Enrollment and Appeals Group ("MEAG"), the Medicare Drug Benefit Group ("MDBG"), and the Medicare Plan Payment Group ("MPPG") are all part of CBC. The MEAG is responsible for all Medicare enrollment and appeals policy under fee-for-service Medicare, the Medicare Advantage program, and the prescription drug program. The MDBG is responsible for oversight and operations of all drug benefit plans offered under

both the Medicare Advantage Program and the prescription drug program. The MPPG is responsible for supporting payment policy development and implementing payment operations for the Medicare Advantage program and the prescription drug program. As the Director of CBC, I oversee all operations of MEAG, MDBG and MPPG.

2. I am familiar with the subject matter of the above-captioned lawsuit, which involves the operation of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA), Pub. L. 108-173, 117 Stat. 2066, 42 U.S.C. § 1395w-101 et seq. (2003). The statements made in this Declaration are based on my personal knowledge and information furnished to me by CMS staff.

3. Title XVIII of the Social Security Act (the Medicare Statute), Pub. L. No. 89-97, 79 Stat 291 (1965) (codified as amended at 42 U.S.C. § 1395 et seq.), sets forth a federally funded health insurance program for the elderly and disabled, known as Medicare. Title I of the MMA amends the Medicare statute by inserting a new Part D ("Medicare Part D"), which establishes Medicare coverage of prescription drugs. See 42 U.S.C. §§ 1395w-101 et seq.

4. Prior to implementation of Medicare Part D, certain individuals who are eligible for both Medicare and Medicaid – known as full benefit dual eligibles ("Dual Eligibles") – received drug coverage from the states under the Medicaid program. Pursuant to the new Medicare drug coverage established by the MMA, however, those Dual Eligibles transitioned to Medicare Part D coverage for prescription drugs commencing on January 1, 2006. Medicare Part D coverage is offered through private prescription drug plans ("PDP sponsors") operating in various regions of the country.

5. Under the MMA, full benefit dual eligibles who are inpatients in a medical institution or nursing facility for which payment is made under Medicaid throughout a month

("institutionalized dual eligibles") are entitled to the "elimination of any beneficiary coinsurance" that would otherwise be imposed when they fill prescriptions at a pharmacy. 42 U.S.C. § 1395w-114(a)(1)(D)(i).

6. CMS must notify PDP sponsors that individuals in their plans are eligible for subsidies, and the amount of the subsidy, including for individuals who qualify as institutionalized dual eligibles. 42 U.S.C. § 1395 w-114(c)(1)(A). CMS, in turn, relies on the States for information about which beneficiaries are full benefit dual eligibles and which of the dual eligibles are institutionalized. Once CMS notifies PDP sponsors that beneficiaries, such as institutionalized dual eligibles, are eligible for subsidies, the PDP sponsors must then "reduce[]the premiums or cost-sharing otherwise imposed by the amount of the applicable subsidy and submit[]to [CMS] information on the amount of each reduction." Id. § 1395w-114(c)(1)(B). CMS then periodically reimburses the PDP Sponsor for the subsidies. Id. §1395w-114(c)(1)(C).

7. CMS has adopted a payment method whereby it makes interim payments to PDP sponsors during the year "based on the low-income cost-sharing assumptions" that have been made during the initial bidding and negotiation process between CMS and PDP sponsors. 42 C.F.R. § 423.335(d)(2)(i). PDP sponsors track their actual cost-sharing expenses and CMS ultimately makes retroactive adjustments and reconciles the amount it has paid PDP sponsors for cost-sharing through interim payments and the costs PDP sponsors claim that they have actually incurred. Id. § 423.343(d). If the final balance so requires, CMS makes final payment for subsidies, including subsidies for institutionalized dual eligibles, after a coverage year.

8. PDP sponsors enter into contracts with long-term care ("LTC") pharmacies, pursuant to which a pharmacy dispenses prescription medications to beneficiaries enrolled in the PDP

sponsor's plan. CMS regulations require that the PDP sponsors offer LTC pharmacies "standard contracting terms and conditions" in order to ensure convenient access to LTC pharmacies to Medicare beneficiaries. 42 C.F.R. § 423.120(a)(5). CMS also requires that contracts between Plan sponsors and pharmacies contain certain provisions aimed at protecting beneficiaries and ensuring that the pharmacies comply with federal law. Id. 423.505(i)(4).

9. CMS does not regulate the terms of payment between PDP sponsors and LTC pharmacies. Specifically, CMS does not regulate whether and under what circumstances PDP sponsors should pay LTC pharmacies cost-sharing amounts for institutionalized dual eligibles. CMS has encouraged the PDP sponsors to work with the LTC pharmacies to resolve between themselves issues regarding payment of cost-sharing amounts for institutionalized dual eligibles. But the agency has not imposed requirements on the PDP sponsors in this regard, nor created any enforcement mechanism for LTC pharmacies to pursue reimbursement of cost-sharing amounts from the PDP sponsors. The terms under which LTC pharmacies are paid cost-sharing amounts for institutionalized dual eligibles by PDPs are dictated purely by the agreements between the two types of entities, and are not affected by any CMS policy.

10. As noted above, CMS makes interim payments to PDP sponsors before obtaining final information about beneficiaries' subsidy eligibility. CMS is unaware of any obstacle that would prevent PDP Sponsors and LTC pharmacies from agreeing between themselves that the PDP sponsors could similarly make interim payments to the LTC pharmacies, or make any other

**arrangement regarding payment of cost-sharing amounts that they might wish**, regardless

of the timing of CMS's provision of eligibility information to the sponsors.

Executed on October 1̸, 2007
Washington, D.C.

_/s/ Abby Block_
ABBY BLOCK