IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LONG TERM CARE PHARMACY ALLIANCE,<br>1776 Massachusetts Avenue, N.W., Suite 410<br>Washington, D.C. 20036, and<br><br>AMERICAN SOCIETY OF<br>  CONSULTANT PHARMACISTS,<br>1321 Duke Street,<br>Alexandria, VA  22314,<br>                              Plaintiffs,<br><br>v.<br><br>MICHAEL O. LEAVITT,<br>   Secretary of the U.S. Department of<br>   Health and Human Services,<br>200 Independence Avenue, S.W.<br>Washington, D.C.  20201,<br><br>U.S. DEPARTMENT OF<br>   HEALTH AND HUMAN SERVICES,<br>200 Independence Avenue, S.W.<br>Washington, D.C.  20201,<br><br>and<br><br>CENTERS FOR MEDICARE AND<br>   MEDICAID SERVICES,<br>200 Independence Avenue, S.W.<br>Washington, D.C.  20201,<br>                              Defendants. | CASE NO. 1:07-cv-0115 (ESH)<br><br><br><br><br><br><br><br><br><br><br><br>AMENDED COMPLAINT FOR<br>DECLARATORY JUDGMENT<br>AND MANDAMUS RELIEF |

## NATURE OF THE DISPUTE

1. Plaintiffs Long Term Care Pharmacy Alliance ("LTCPA") and American Society of Consultant Pharmacists ("ASCP"), on behalf of their members (collectively the "LTC Pharmacies"), seek to remedy through the issuance by this Court of a mandamus order and declaratory judgment past and continuing failures by Defendants Centers for Medicare and Medicaid Services ("CMS"),

Secretary Michael O. Leavitt (the "Secretary"), and the United States Department of Health and Human Services ("HHS") to execute their duties under the Medicare Prescription Drug Improvement and Modernization Act ("Act" or the "MMA"), 42 U.S.C. §§ 1395w-101-152, and its implementing regulations.

2. Defendants have the statutory and regulatory duty to implement a key component of the program – the provision of prescription drugs without the imposition of a co-payment obligation under the Medicare Part D program to certain beneficiaries who are Medicaid- and Medicare-eligible nursing home residents ("institutionalized dual eligibles"). Defendants have failed to do so, thereby injuring LTC Pharmacies.

3. The specific failures by Defendants are: (a) failing to timely provide complete and accurate eligibility data to prescription drug plans ("PDPs"); and (b) enabling and causing the improper assessment of co-payments for a class of beneficiaries who, under the MMA, are not to be assessed any co-payments. Paramount is CMS's acknowledged failure during the entire seventeen months of the Medicare Part D program to provide PDPs with adequate data. These failures have created and perpetuate a systemic data-based impediment to the proper functioning of the Part D program.

4. As a result of Defendants' repeated failures, PDPs have improperly assessed co-payments for institutionalized dual eligible beneficiaries and have not paid Plaintiffs' member LTC Pharmacies in full for the medications these pharmacies have dispensed to those beneficiaries. Consequently, LTC Pharmacies are carrying an enormous and ever-increasing cost-sharing burden of institutionalized dual eligible beneficiaries who have been unlawfully charged co-payments. Plaintiffs estimate that the amount owed to the LTC Pharmacies by PDPs for these co-payments is currently tens of millions of dollars.

5. A court order declaring Defendants to have violated their duties and compelling them to fulfill their statutory and regulatory obligations is necessary to address and relieve the injuries Defendants' failures have caused Plaintiffs' members.

## PARTIES

6. Plaintiff LTCPA is a Delaware limited liability company headquartered in the District of Columbia and organized for the purposes of protecting the interests of LTC Pharmacies and long-term care facility residents and advocating on their behalf before governmental and other entities.

7. LTCPA's members include, but are not limited to, the two leading long-term care pharmacy companies in the United States. The LTC Pharmacies represented by LTCPA play a vital role in providing prescription medications and drug therapy for tens of thousands of senior citizens and individuals with chronic illnesses living in long-term care facilities, including seniors and other individuals residing in long-term care facilities who have prescription drug coverage under the new Medicare Part D prescription drug benefit program. LTCPA brings this action on behalf of its members.

8. Plaintiff ASCP is a Massachusetts corporation, with its principal place of business in Alexandria, Virginia. ASCP serves as the international professional society representing thousands of practicing senior care and consultant pharmacists, including pharmacists across the United States (including in the District of Columbia), by providing leadership, education, advocacy, and resources to advance the practice of senior care pharmacy. Consultant pharmacists and senior care pharmacists play a vital role in reviewing optimal drug therapy for millions of senior citizens and individuals with chronic illnesses living in long-term care facilities and other community settings. Many ASCP members own and operate long-term care pharmacies. ASCP brings this action on behalf of its members.

9. As a consequence of Defendants' failures, members of LTCPA and ASCP have been and continue to be injured. LTCPA and ASCP members, such as Omnicare, Inc. and PharMerica Corporation, have not been paid co-payment amounts they are owed and have been forced to carry the cost-sharing burden of misclassified beneficiaries. Accordingly, the members of LTCPA and ASCP would have standing to bring this suit on their own behalf. The member interests that LTCPA and ASCP seek to protect in this action are germane to their purposes of protecting the interests of LTC Pharmacies, senior care and consultant pharmacists and residents of long-term care facilities. Neither the claims asserted nor the mandamus and declaratory relief sought require the participation of the individual members of LTCPA or ASCP.

10. Defendant U.S. Department of Health and Human Services ("HHS") is the agency tasked by law with administration of the Social Security program, including Medicare and Medicaid. Defendant CMS is the agency within HHS that administers the Medicare and Medicaid programs and is responsible for the continued oversight and enforcement of the Medicare and Medicaid regulations, including the administration of the Medicare Part D Program.

11. Defendant Michael O. Leavitt is the Secretary of HHS. In that capacity, he has responsibility for the conduct and policies of HHS, including responsibility for CMS. He is sued in his official capacity.

## JURISDICTION AND VENUE

12. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 1361 (Mandamus Act).

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) because Plaintiff LTCPA resides in this District, all Defendants reside in this District, and events giving rise to the claims occurred and are occurring in this District.

## BACKGROUND

### LTC Pharmacies and the Residents They Serve

14. LTCPA members and many ASCP members own and operate long-term care pharmacies. These pharmacies do not provide retail pharmacy services. Rather, LTC Pharmacies focus on serving individuals who are frail, elderly, or disabled and who reside in long-term care facilities, such as nursing homes. The average long-term care facility patient is approximately 83 years old, has approximately 8 different medical diagnoses, and requires an average of 8 medications at any given time.

15. In serving long-term care facility residents, LTC Pharmacies provide numerous services in dispensing drugs beyond those provided by retail pharmacies. For example, LTC Pharmacies provide specialized medication packaging in "unit dose packages" (referred to as "blister packs"), specialized drug regimen reviews, chart reviews, and consultant pharmacy services. In addition, LTC Pharmacies deliver medications to long-term care residents and are available on a 24-hour a day basis every day of the year. These extra services not only provide effective and efficient care for long-term care facility residents, but also offer protection to these residents from possible medication errors. As a consequence, the federal health care programs, Medicare and Medicaid, save billions of dollars through the avoidance of medication errors and additional health care costs.

### The Federal Medicare Prescription Drug Program

16. In December 2003, as part of the MMA, Congress made new prescription drug coverage available to all Medicare beneficiaries. The benefit, also known as "Part D," became effective on January 1, 2006.

17. The MMA tasks the Secretary with administering the Part D program, and the Secretary has in turn delegated this obligation to CMS. 42 U.S.C. § 1395b-9(a)(3)(A).

18. Within the class of all Medicare beneficiaries, there exists a special class of beneficiaries who are eligible under both the Medicare and Medicaid programs, commonly referred to as "dual eligibles." These individuals previously received prescription drug coverage through their respective state Medicaid programs.

19. On January 1, 2006, the Part D coverage for dual eligibles replaced the coverage previously available to them under the Medicaid program.

20. Over 60 percent of the long-term care residents participating in Part D qualify as "institutionalized dual eligibles." "Institutionalized" refers to residents in long-term care facilities whose services are being covered by Medicaid for the month. 42 U.S.C. § 1396a(q)(1)(B) and 42 C.F.R. § 423.772. CMS processes data submitted by states to identify institutionalized dual eligibles, which affords those beneficiaries access to certain low-income subsidies under Part D, including relief from the obligation to pay premiums and cost-sharing amounts.

21. "Cost sharing" refers to the amounts that Part D beneficiaries who are not institutionalized dual eligibles must pay as part of the cost of medications covered under their Part D benefit. Co-payments constitute one type of cost-sharing and are pre-determined amounts payable by the beneficiary with respect to the cost of each covered medication (e.g., a requirement that the beneficiary pay $5 of the cost of each branded drug).

22. When it passed the MMA, Congress mandated zero cost-sharing under Part D for institutionalized dual eligibles, as had been the practice under Medicaid. The MMA and implementing regulations provide that individuals who qualify as institutionalized "full-benefit dual eligibles" are not to be assessed any co-payments for covered medications obtained through their Part D plans. 42 U.S.C. § 1395w-114(a)(1)(D)(i); 42 C.F.R. § 423.782(a)(2)(ii).

23. CMS has recognized that for institutionalized dual eligibles, assessment of even a small cost-sharing amount would be a hardship: "We believe the Congress intended this provision to address the fact that dual-eligible persons residing as inpatients in medical institutions are permitted to retain only a small personal needs allowance, which precludes payment of even nominal copayments." 70 Fed. Reg. 4372 (Jan. 28, 2005).

### The Part D Program and the Relationship Among CMS, PDPs and LTC Pharmacies

24. PDPs are the private entities that directly provide drug coverage to Medicare beneficiaries. They participate in the program through contracts with Defendant CMS.

25. CMS's regulations require PDPs to contract with LTC Pharmacies in their respective service areas to actually provide medications to institutionalized beneficiaries. 42 C.F.R. § 423.120(a)(5). Following enrollment in a PDP, institutionalized dual eligibles receive their prescription drugs from the LTC Pharmacy that has contracted with their chosen PDP or PDPs. The provision of those drugs by LTC Pharmacies is an essential piece of the Part D program.

26. CMS plays a significant and ongoing role in shaping the PDP-LTC Pharmacy contracts. For example, CMS has mandated certain services that must be covered in payments by PDPs to the LTC pharmacies. It also examines PDP-LTC Pharmacy contracts to determine if certain service criteria (which CMS has specified must be included in the contracts) are present and issues agency guidance documents commenting on terms and practices for the contracts that it deems acceptable or unacceptable.

27. Additionally, by contract with long-term care facilities, LTC Pharmacies provide all medically necessary prescription drugs, without regard to which party is liable for payment, in order to enable the long-term care facilities to fulfill their federal statutory obligations to their residents to provide such medications.

28. The process for PDP's payment to an LTC Pharmacy is as follows: After the LTC Pharmacy dispenses a drug to a beneficiary enrolled in a PDP's plan, it bills the PDP for reimbursement with the PDP. The LTC Pharmacy collects any co-payment that may be due from the beneficiary. The PDP is required to pay the LTC Pharmacy an agreed-upon amount for the prescribed medication less any cost-sharing that is to be borne by the beneficiary. As stated above, in the case of institutionalized dual eligible beneficiaries, there is no cost-sharing and the LTC Pharmacies do not collect co-payments from such beneficiaries. Indeed, LTC Pharmacies are prohibited from billing institutionalized dual eligible beneficiaries for the amounts withheld by the PDPs, as these constitute obligations of the PDP. The PDP is required to reimburse the LTC Pharmacy the full amount for the provided medications without any deduction for co-payments.

29. As part of his duties in administering the Part D program, the Secretary is obligated to establish a process for (a) providing the eligibility data to PDPs and (b) appropriate reduction of cost-sharing so that the right cost-sharing levels under the statute are charged. In particular, the Secretary must "provide a process whereby... (A) the Secretary provides for a notification of the PDP sponsor... that [a Part D beneficiary] is eligible for a subsidy and the amount of the subsidy... [and] (B) the sponsor or organization involved reduces the premiums or cost-sharing otherwise imposed by the amount of the applicable subsidy...." 42 U.S.C. § 1395w-114(c)(1)(A)-(B). If the Secretary fails to do so, the LTC Pharmacies are not fully compensated for the prescription drugs they have provided to institutionalized dual eligibles.

30. The regulations for the Part D program impose a duty upon CMS to provide eligibility data to PDPs. Specifically, 42 C.F.R. § 423.800(a) provides:

> *Notification of eligibility for low-income subsidy.* CMS notifies the Part D sponsor offering the Part D plan, in which a subsidy eligible individual is enrolled, of the individual's eligibility for a subsidy under this section and the amount of the subsidy.

31. PDPs rely upon the data provided by CMS to determine their reimbursement amounts to LTC Pharmacies. LTC Pharmacies depend upon CMS to timely provide accurate and complete eligibility data in order to be reimbursed the amounts they are owed for the prescription medicines they dispense to institutionalized dual eligibles.

32. There has often been, and continues to be, significant lag time between a beneficiary's enrollment, CMS's obtaining data, and CMS's provision of data to PDPs. Since January 1, 2006, in many instances, CMS has provided eligibility data on specific beneficiaries to PDPs several months after an LTC Pharmacy has dispensed prescription medicines to those individuals and submitted reimbursement claims to the PDP.

33. For a large number of institutionalized dual eligible beneficiaries, CMS has failed to provide PDPs with eligibility data accurately reflecting such beneficiaries' status. On information and belief, for an estimated 15% of persons known to LTC Pharmacies to be institutionalized dual eligibles, the data currently provided by CMS to PDPs still fail to reflect the fact that those beneficiaries are institutionalized and/or eligible under both the Medicare and Medicaid programs.

34. The MMA provides that in the contract that CMS is required to sign with each PDP, the PDP must agree to comply with the statutory and regulatory requirements of the Part D program. 42 U.S.C. § 1395w-112(b)(1). Accordingly, a model contract between CMS and PDPs requires that the PDPs agree:

> to operate in accordance with the regulations at 42 CFR § 423.1 through 423.910..., sections 1860D-1 through 1860D-42... of the Social Security Act, and the solicitation, as well as all other applicable Federal statutes, regulations, and policies. This contract is deemed to incorporate any changes that are required by statute to be implemented during the term of this contract and any regulations or policies implementing or interpreting such statutory provisions.

PDP-CMS Contract, Article IA. Upon information and belief, each PDP contract with CMS contains such language.

9

35. CMS's regulations require that PDPs must reduce a subsidy-eligible individual's premiums and cost-sharing by the amounts applicable to the subsidy-eligible individual's status. 42 C.F.R. § 423.800(b) provides:

> *Reduction of premium or cost-sharing by PDP sponsor or organization.* The Part D sponsor offering the Part D plan, in which a subsidy eligible individual is enrolled must reduce the individual's premiums and cost-sharing as applicable, and provide information to CMS on the amount of those reductions, in a manner determined by CMS. The Part D sponsor must track the application of the subsidies under this subpart to be applied to the out-of-pocket threshold.

In the case of an institutionalized dual eligible beneficiary, then, PDPs must reduce the premiums and cost-sharing to zero.

36. CMS's regulations require that if an institutionalized dual eligible beneficiary has paid premiums or cost-sharing above the amounts he or she is required to, or if an organization has paid those excess amounts on behalf of that individual, then the PDP must reimburse the excess amounts to the appropriate party, *i.e.,* the party who paid. 42 C.F.R. § 423.800(c) provides:

> (c) *Reimbursement for cost-sharing paid before notification of eligibility for low-income subsidy.* The Part D sponsor offering the Part D plan must reimburse subsidy eligible individuals, and organizations paying cost-sharing on behalf of such individuals, any excess premiums and cost-sharing paid by such individual or organization after the effective date of the individual's eligibility for a subsidy under this subpart.

37. Because institutionalized dual eligibles do not pay premiums or cost-sharing, PDPs must reimburse the LTC Pharmacies— which have been carrying the cost-sharing debt— for any co-payments that were improperly assessed.

## COUNT I – CLAIM UNDER THE ADMINISTRATIVE PROCEDURE ACT— MANDAMUS AND DECLARATORY RELIEF REQUESTED

38. Paragraphs 1-37 of this Amended Complaint are incorporated by reference.

39. CMS has a continuing duty to administer the Medicare Part D program and to ensure that institutionalized dual eligible beneficiaries are not assessed co-payments. 42 U.S.C. § 1395b-

9(a)(1); 42 U.S.C. § 1395b-9(a)(3)(A); 42 U.S.C. § 1395w-114(a)(1)(D)(i); 42 C.F.R. § 423.782(a)(2)(ii).

40. CMS also has a continuing duty to provide complete, updated and accurate eligibility data to PDPs in a timely fashion. 42 C.F.R. § 423.800(a). In the absence of such eligibility data indicating beneficiaries' institutionalized dual eligible status, certain PDPs are refusing to reimburse the LTC Pharmacies for co-payment amounts. The result of CMS's failure to provide timely eligibility data to PDPs is the improper assessment of co-payments to beneficiaries, the corresponding deprivation of reimbursement amounts indisputably owed to LTC Pharmacies, and the attendant burden on LTC Pharmacies of carrying improperly assessed cost-sharing amounts.

41. During 2006, and continuing through the present, CMS has failed to provide complete, updated and accurate eligibility data to PDPs.

42. In a March 6, 2007 memorandum from the Director of its Medicare Plan Payment Group, CMS stated that it would shortly thereafter provide PDPs with complete eligibility data for 2006. The data provided, however, were incomplete in many respects and still did not properly classify many beneficiaries as institutionalized dual eligibles.

43. CMS has acknowledged that during the seventeen months since the program began, it has failed to provide PDPs with adequate data. *See* Exhibit 1 hereto (June 1, 2007 Memorandum from Cynthia Tudor, Ph.D., Director, Medicare Drug Benefit Group, CMS to All Part D Plan Sponsors Re: Convenient Access to LTC Pharmacies). CMS admitted in the same memorandum that it has failed to implement a system that allows PDPs to link an enrollee to a particular institution.

44. PDPs are obligated not to assess co-payments for institutionalized dual eligible beneficiaries, and to reconcile and pay any co-payments that they do withhold for such beneficiaries. PDPs,

however, continue to assess such co-payments and have failed to fully reconcile and pay co-payments previously withheld.

45. CMS has acknowledged that its failure to properly administer the Part D program is injuring residents of long-term care facilities and the LTC Pharmacies. In a guidance that it issued on December 22, 2006, CMS stated that "problems with cost sharing have disproportionately impacted beneficiaries who are residents of nursing homes, and for whom long-term care (LTC) pharmacies are holding receivable balances rather than charging beneficiaries incorrect cost sharing amounts."

46. Due to CMS's failure to provide PDPs with complete and accurate eligibility data, certain PDPs indicated that they would take the extraordinary step of issuing reimbursement payments directly to long-term care facility residents. It is undisputed that the beneficiaries did not pay the co-payments at issue and that the LTC Pharmacies are the organizations that effectively paid the cost-sharing on behalf of such individuals by holding the debt for the unreimbursed cost-sharing amounts. If Defendants had fulfilled their duties, there would not have been an improper assessment of co-payments in the first instance, and LTC Pharmacies would have received full payment for the prescription drugs they provided.

47. Throughout 2006, Plaintiffs attempted to work with CMS and PDPs to address the problems created by CMS's misclassifications of eligible individuals, especially CMS's failure to provide necessary eligibility data on a timely basis and the consequent refusals of certain PDPs to reimburse LTC Pharmacies for the improperly withheld co-payments.

48. The Administrative Procedure Act, 5 U.S.C. § 706(1), provides that a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed."

49. Defendants' failure to timely provide complete, updated and accurate eligibility data to PDPs warrants relief under 5 U.S.C. § 706(1).

50. Plaintiffs' members have no adequate remedy at law to address Defendants' failures. As a result of Defendants' continued failures to perform their duties, institutionalized dual eligible beneficiaries have in effect been improperly assessed co-payments, and LTC Pharmacies have been deprived of reimbursements owed to them and forced to carry tens of millions of dollars of cost-sharing debt on behalf of misclassified institutionalized dual eligibles. That burden grows by millions of dollars each month that Defendants fail to fulfill their duties. While the LTC Pharmacies have absorbed that burden since the inception of the Part D program, as the amount of that cost-sharing debt multiplies each month, their ability to continue to do so is not unlimited.

51. LTC Pharmacies are prohibited from billing the institutionalized dual eligible beneficiaries for the amounts withheld by the PDPs. Absent the requested relief, Plaintiffs' members face two undesirable choices: (i) institute and litigate dozens, if not hundreds, of actions against individual PDPs contesting the systematic underpayment of many thousands of $3 to $5 co-payment amounts for 2006 to the present; or (ii) continue to absorb the ever-increasing burden of the co-payments that have been improperly assessed and withheld.

52. Defendants have repeatedly avoided their statutory and regulatory duties, and, consequently, only the declaratory and mandamus relief that this Court can provide will redress the injuries that Defendants' failures have caused Plaintiffs' members.

## COUNT II— VIOLATION OF FIFTH AMENDMENT RIGHT TO DUE PROCESS— MANDAMUS AND DECLARATORY RELIEF REQUESTED

53. Paragraphs 1-52 of this Amended Complaint are incorporated by reference.

54. LTC Pharmacies have a property interest in complete reimbursement (which includes payment of co-payment amounts improperly-assessed for institutionalized dual eligible beneficiaries) for

prescription drugs they have dispensed to institutionalized dual eligibles under the Part D program.

55. The inadequacy of the procedures by which Defendants provide eligibility data to PDPs have resulted in multiple and continuing failures by the agency to timely provide complete and accurate eligibility data to PDPs. These procedural inadequacies and attendant failures have had the direct and foreseeable effects of erroneously and wrongfully depriving LTC Pharmacies of property – full reimbursement for prescription drugs to institutionalized dual eligible beneficiaries they have provided pursuant to the Part D program. As a consequence, LTC Pharmacies have not received many payments and have had others delayed for substantial periods of time. CMS's failure to provide adequate procedures has forced and is forcing LTC Pharmacies to incur large administrative costs related to attempts to obtain full reimbursement and to carry an ever-increasing amount of cost-sharing burden for institutionalized dual eligibles who have been improperly assessed co-payments by PDPs.

56. The administrative and financial burdens of providing adequate procedures with respect to provision of eligibility data are minimal.

57. Defendants' failure to provide adequate procedural safeguards to protect against deprivation of the Plaintiff' members' right to payment for the prescription drugs provided pursuant to the Part D program violates Plaintiffs' members' right to due process under the Fifth Amendment to the United States Constitution.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request this Court to:

1. Assume jurisdiction over this action.
2. Enter a declaratory judgment that:

14

    a. Relief under 5 U.S.C. § 706(1) is warranted because Defendants have failed to timely provide complete and accurate eligibility data; and

    b. Defendants have violated Plaintiffs' members' Fifth Amendment right to due process.

3. Grant and issue a writ of mandamus compelling Defendants, their agents, employees, and all persons acting in concert with Defendants, to:

    a. Provide complete, updated and accurate eligibility data to PDPs within a time to be defined by the Court; and

    b. On an ongoing basis, timely provide complete, updated and accurate eligibility data to PDPs.

4. Issue such writs as are appropriate in aid of this Court's jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651(a);

5. Award Plaintiffs' costs, expenses, and attorneys' fees incurred herein; and

6. Grant such other relief as the Court deems proper and necessary.

November 16, 2007

Respectfully submitted,

/s/ John Oberdorfer

John Oberdorfer (D.C. Bar No. 145714)
David Farber (D.C. Bar No. 415899)
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Counsel for Plaintiffs

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard
Baltimore, Maryland 21244-1850



## CENTER FOR BENEFICIARY CHOICES

<u>MEMORANDUM</u>

**Date:** June 1, 2007

**To:** All Part D Plan Sponsors

**From:** Cynthia Tudor, Ph.D., Director, Medicare Drug Benefit Group

**Subject:** Convenient Access to LTC Pharmacies

Recently, CMS has been made aware that Part D sponsors may not have been provided with addresses that would help them: (1) confirm that a beneficiary is institutionalized, and (2) identify the particular long-term care (LTC) facility in the sponsor's service area in which those enrollees reside. We have also heard of difficulties associated with contracting efforts between Part D sponsors and State-operated pharmacies serving beneficiaries in institutions for mental disease (IMDs) and intermediate care facilities for the mentally retarded (ICFs-MR) designated by States as institutions. This memorandum provides guidance to Part D sponsors on both these issues.

### 1. Identifying the Locations of Institutionalized Enrollees

Access by a Part D sponsor to the addresses of its enrollees residing in LTC facilities promotes the efficient administration of its Part D plan and the sponsors' compliance with various requirements under Part D. Currently, CMS systems do not provide sponsors with address information that would allow sponsors to link an enrollee to a particular institution. We are currently working on a change to our systems that would ensure that Part D sponsors receive address information for their enrollees who are identified in our systems as residing in an institution. In the interim, however, we expect that sponsors will obtain address information from network pharmacies that serve enrollees in a sponsor's plan(s) within the scope of their current contacts. For the reasons discussed in Attachment 1, CMS believes the pharmacies' disclosure of LTC enrollees' addresses is permissible under the HIPAA Privacy Rule.

### 2. Contracting with State-Run Pharmacies

We are aware that there are special issues associated with the operations of State-owned or in-house LTC pharmacies that serve Part D enrollees residing in facilities (e.g., IMDs and ICFs/MR) recognized by States as institutions and that have as inpatients any institutionalized individuals (any full benefit dual eligible for whom payment is made under Medicaid throughout

1

a month, as provided in section 1902(q)(1)(B) of the Social Security Act). In section 50.5.1 of Chapter 5 of the *Prescription Drug Benefit Manual*, we have instructed sponsors to continue their contracting activity as they identify LTC facilities and LTC pharmacies, and as they examine their auto-enrollment assignments and incoming enrollments. As stated in section 50.5.4 of Chapter 5 of the *Prescription Drug Benefit Manual*, sponsors are not compliant with our LTC convenient access standard if they do not provide access to covered Part D drugs via a LTC pharmacy in their network for all of their enrollees who reside in LTC facilities. Thus, to the extent that State-owned and operated LTC pharmacies are involved, Part D sponsors should be prepared to readily negotiate with States to address contracting issues.

Several States have raised concerns that some sponsors are not acting in good faith to finalize contracts with State-owned and operated LTC pharmacies for both 2006 and 2007. Further, such complaints specify that sponsors are using the March 31, 2007 coverage year deadline for claims submission to avoid contracting for 2006 and, thus, paying claims for enrollees residing in some IMDs and ICFs/MRs. We clarify that to the extent a State attempted to contract with a sponsor throughout 2006 (and can document those efforts) on its State-run pharmacies' behalf, sponsors are still expected to continue to process claims for any of their enrollees residing in LTC facilities and to whom they were required to provide convenient access to a network LTC pharmacy in 2006.

We also clarify that if a State can establish a clear fact pattern that demonstrates that it attempted to contract with a sponsor throughout 2006, that the sponsor did not act in good faith, and that this is the reason the State was unable to secure contracts for its State-run LTC pharmacies, CMS will intervene to undertake any appropriate enforcement actions against the sponsor.

If you have any questions regarding convenient access to LTC pharmacies, please contact Vanessa Duran at Vanessa.Duran@cms.hhs.gov or 410-786-8697. We appreciate your continued support in meeting the needs of Medicare beneficiaries. Without your help, the Medicare prescription drug benefit would not be a success.

## Attachment 1: HIPAA Permitted Disclosures of Beneficiary Address Information

Both LTC pharmacies and Part D plans are considered covered entities under the HIPAA Privacy Rule. As a covered entity, it is permissible for a LTC pharmacy to disclose protected health information, including beneficiaries' addresses consistent with the HIPAA Privacy Rule. In accordance with 45 CFR 164.506(c)(4)(i), a covered entity may disclose an individual's protected health information to another covered entity for the health care operations activities of the entity that receives the information, if: (1) each entity has a relationship with the individual, (2) the protected health information pertains to that relationship, and (3) the purpose of the disclosure is a purpose listed under paragraphs (1) or (2) of the definition of "health care operations" under 45 CFR 164.501. CMS believes the first requirement is satisfied when the beneficiary both obtains his or her prescriptions from the pharmacy disclosing the protected health information and is enrolled in the Part D plan receiving the information. The second requirement is satisfied because the individual's address is relevant to the Part D plan's ability to provide prescription drug benefits to the individual. With respect to the third requirement, purposes listed under paragraphs (1) and (2) of the definition of "health care operations" include: (1) population-based activities relating to improving health or reducing health care costs; and (2) evaluating provider performance. In CMS's view, the exchange of LTC enrollees' addresses falls under one of these two purposes when the Part D plan requests this information from a LTC pharmacy for the following purposes:

- **Ensuring a high-quality, cost-effective benefit.** Acquiring the addresses of its LTC enrollees may further a Part D plan's objective of providing a high-quality, cost-effective drug benefit to its LTC enrollees. Toward this end, a Part D plan will compare the competing LTC pharmacies available to serve its LTC enrollees, and focus its contracting efforts on those pharmacies providing the highest quality pharmacy services at the lowest cost. In order to identify those pharmacies available to serve its LTC enrollees, the Part D plan must know where those enrollees reside. Consequently, CMS believes the disclosure of LTC enrollees' addresses to the Part D plan by LTC pharmacies promotes the plan's population-based activities relating to improving health and reducing health care costs, and thus is a permissible disclosure under the HIPAA Privacy Rule.

- **Evaluating network pharmacies' performance.** Acquiring the addresses of its LTC enrollees may promote a Part D plan's ability to evaluate the performance of its network LTC pharmacies, specifically whether they are complying with the terms and conditions of their contract with the plan and the plan's LTC policies. For example, plans are required to have in place certain minimum transition process requirements, as provided in <u>section 30.4</u> of Chapter 6 of the *Prescription Drug Benefit Manual*. These transition requirements vary for institutionalized versus non-institutionalized beneficiaries (e.g., only enrollees residing in LTC facilities are entitled to 31-day temporary fills of non-formulary drugs, with multiple refills as necessary, during their transition period). In order to evaluate whether network pharmacies are adjudicating claims consistent with the appropriate transition requirements for institutionalized and non-institutionalized enrollees, it is necessary for the plan to know whether those enrollees reside in the community (including in a non-LTC facility) or in a LTC facility. Acquiring the addresses of enrollees will help the plan identify those

individuals who reside in long-term facilities and those who do not. Similarly, to the extent that a plan requires its network pharmacies to perform medication therapy management (MTM) activities for institutionalized beneficiaries but not for non-institutionalized beneficiaries, plans will be unable to fully evaluate their network pharmacies' performance vis-à-vis contractual agreements related to MTM activities if they cannot identify an enrollee as institutionalized. Finally, to the extent that a plan negotiates different dispensing fees with a network pharmacy for institutionalized versus non-institutionalized enrollees, that plan must be able to identify its institutionalized beneficiaries in order to assess whether a network pharmacy is adjudicating claims using the correct contractual negotiated price.

- **Sufficiency of Pharmacy Networks.** Evaluating the adequacy of sponsors' pharmacy networks is essential to building and maintaining a network that provides enrollees with convenient access to network pharmacies. Without knowledge of where enrollees reside, it would be difficult for a sponsor to ensure its compliance with the various pharmacy access requirements detailed in section 50 of Chapter 5 of the *Prescription Drug Benefit Manual*. This includes the convenient access requirements for retail and LTC pharmacies, as well as the adequate access requirement for home infusion pharmacies. Consequently, CMS believes the disclosure of LTC enrollees' addresses to the Part D plan by LTC pharmacies promotes the plan's population-based activities relating to improving health through improved network access, and thus is a permissible disclosure under the HIPAA Privacy Rule.

Additionally, the HIPAA Privacy Rule permits a covered entity, such as a LTC pharmacy, to disclose PHI to another covered entity for that covered entity's payment purposes. 45 CFR 164.506(c)(3). CMS believes the exchange of LTC enrollees' addresses falls under this provision when the Part D plan requests this information from a LTC pharmacy for the following purposes:

- **Correct Application of Cost-Sharing.** A Part D enrollee who is both a full-benefit dual eligible and resides in a LTC facility, as defined in section 10.2 of Chapter 5 of the *Prescription Drug Benefit Manual*, is eligible for no copays. In order to ensure the correct application of the institutionalized copays ($0) for these low income subsidy eligible individuals, Part D plans need to identify who among their enrollees are institutionalized dual eligible individuals. Knowledge of an enrollee's residence in a LTC facility would assist plans in identifying these individuals.

- **Ensuring Uniformity of Benefits.** Sponsors need to know whether their enrollees reside in LTC facilities rather than in the community (including assisted living facilities and other forms of congregate residential setting that do not meet the definition of a "LTC facility") in order to ensure that they are providing a uniform benefit to all enrollees residing in LTC facilities, and a uniform benefit to enrollees residing in the community. For example, as discussed in section 50.5.3 of Chapter 5 of the *Prescription Drug Benefit Manual*, Part D sponsors may extend the transition period for LTC enrollees beyond 90 days, or may waive prior authorization or other utilization management edits for LTC enrollees, but not for non-LTC enrollees. Enrollee addresses will assist a sponsor in identifying its LTC enrollees so that it may ensure that plan benefits available to LTC enrollees are applied uniformly across

this population and are not extended to non-LTC enrollees. This falls within the definition of "payment" for purposes of the HIPAA Privacy Rule, since "payment" includes "activities undertaken by (i) a health plan ... to determine or fulfill its responsibility for coverage and provision of benefits under the health plan." 45 CFR 164.501.

All of the above disclosures are subject to the HIPAA Privacy Rule's minimum necessary standard. Accordingly, the LTC pharmacy must "make reasonable efforts to limit protected health information to the minimum necessary to accomplish the intended purpose of the use, disclosure, or request." 45 CFR 164.502(b)(1). The LTC pharmacy may rely on the plan sponsor's request as requesting only the minimum necessary information, if the plan sponsor is a covered entity and such reliance is reasonable under the circumstances. 45 CFR 164.514(d)(3)(iii).